# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60021

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2018

Lyle W. Cayce
Clerk

HUGO ADIEL GRANADOS-GUEVARAS,

Petitioner

v.

JEFFERSON B. SESSIONS, III, U.S. ATTORNEY GENERAL,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A098 121 628

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

We decide whether the Board of Immigration Appeals erred when it affirmed the Immigration Judge's denial of the petitioner's motion to reopen removal proceedings and dismissed the petitioner's appeal. The Board of Immigration Appeals declined to disturb the Immigration Judge's decision, concluding that the petitioner failed to demonstrate that he did not receive proper notice of his removal hearing, that the petitioner did not demonstrate

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60021

changed country conditions in El Salvador since the expiration of the 90-day filing period in 2005, and that sua sponte reopening of the removal proceedings was not appropriate under the circumstances. We deny the petition for review in part and dismiss in part for lack of jurisdiction.

## Facts and Proceedings

Hugo Adiel Granados-Guevara (a.k.a. Hugo Adiel Granados-Guevaras)[1] ("Granados"), a native and citizen of El Salvador, entered the United States without inspection on or about June 7, 2004, and an officer of the United States Customs and Border Control ("Border Control") encountered Granados on the same date. Border Patrol issued a notice to appear ("NTA") for "Hugo Adiel Granados-Guevaras," initiating removal proceedings because Granados was present in the United States without being admitted or paroled.

The NTA specifically ordered Granados to appear before an Immigration Judge ("IJ") at the Harlingen Immigration Court on December 7, 2004. Moreover, the NTA: (1) alleged personal service on June 7, 2004, (2) contained a signature in its certificate of service on the line reading "Signature of Respondent if Personally Served," (3) contained a fingerprint in its certificate of service, (4) contained a warning that Granados could be ordered removed, in his absence, if he failed to appear for an immigration court hearing, and (5) indicated that Granados received oral warnings in his native language of the consequences of a failure to appear at an immigration court hearing. Border Control records further indicated that Granados was so warned at the time of the encounter and that he acknowledged his understanding of everything that was explained to him. Granados subsequently failed to appear for his

---

[1] According to Granados, the maternal portion of his surname is Guevara, not Guevaras. This discrepancy will be discussed at length when we address Granados's argument that he did not receive proper notice of his removal hearing because the notice to appear erroneously added an "s" to his actual maternal surname, Guevara.

2

No. 17-60021

December 7, 2004 hearing, and the IJ ordered him removed in absentia to El Salvador on that date.

More than eleven years later, in January 2016, Granados filed a motion to reopen his removal proceedings. In his motion, he alleged that he was entitled to relief on three grounds: (1) he received insufficient notice of the December 7, 2004 hearing, as required by the immigration statute, because the NTA erroneously added an "s" to his actual maternal surname, Guevara; (2) changed country conditions in El Salvador now allow him to apply for asylum and related relief; and (3) the immigration court should reopen his removal proceedings sua sponte due to an exceptional circumstance, namely a change in the law. Attached to his motion to reopen, Granados submitted an application for asylum and related relief, a written statement, identity documents, country conditions evidence, and other documents and letters of support from family, friends, and local organizations.

The IJ denied Granados's motion to reopen. First, the IJ concluded that, regardless of the alleged misspelling of Granados's name on the NTA, he was personally served in compliance with the immigration statute and, thus, received proper notice. Second, the IJ concluded that Granados's attempt to reopen removal proceedings to apply for asylum was improperly based on a "change in personal circumstances," not changed country conditions. The IJ further reasoned that gang violence was a "chronic problem" in El Salvador dating back to 2004 and that Granados had not shown a "qualitative difference" between El Salvador's violence in 2004 and the present day. Finally, the IJ found no reason to reopen removal proceedings sua sponte.

Granados appealed to the Board of Immigration Appeals ("BIA"), arguing that the IJ made errors of fact and law in rejecting the three bases of his motion to reopen. Ultimately, the BIA affirmed the IJ's denial of Granados's motion to reopen removal proceedings and dismissed the appeal. The BIA

No. 17-60021

described the IJ's rulings, stated that it declined to disturb the IJ's decision, and further explained that it was "writ[ing] separately to emphasize that [Granados's] untimely motion to reopen must be based on changed country conditions arising in El Salvador, not 'changed circumstances,'" as defined in the context of a late asylum application filed more than one year after arrival to the United States. It also determined that a sua sponte reopening was inappropriate, given that Granados did not inquire about his case until eleven years after being personally served with the NTA.

Granados thereafter filed a timely petition for review with this court, essentially re-urging the arguments that he brought before the BIA.

### Standard of Review

Generally, we have the authority to review only the decision of the BIA, but when the IJ's ruling affects the BIA's decision, then we also review the IJ's decision. *Zhu v. Gonzales*, 493 F.3d 588, 593 (5th Cir. 2007). Here, we review both the decisions of the BIA and IJ because while the BIA did not expressly adopt the IJ's decision, it cited the IJ's ruling favorably and included very little of its own reasoning before affirming the IJ's decision. *See id.* at 594 (reviewing both the decisions of the BIA and IJ because of, in part, the "paucity of findings of fact, [and] the conclusional perfunctoriness of the BIA's opinion").

We review the denial of a motion to reopen removal proceedings under a deferential abuse of discretion standard. *Gomez-Palacios v. Holder*, 560 F.3d 354, 358 (5th Cir. 2009) (applying the standard in the context of a motion to rescind and reopen an in absentia order of removal, "regardless of the basis of the alien's request for relief"). We must uphold the BIA's decision unless it is "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006) (internal quotation marks and citation omitted).

No. 17-60021

"We review factual findings of the BIA and IJ for substantial evidence, and questions of law de novo, giving considerable deference to the BIA's interpretation of the legislative scheme it is entrusted to administer." *Zhu*, 493 F.3d at 594 (internal quotation marks and citations omitted). "[W]e may reverse a decision on a factual finding only when the evidence compels us to do so," but "we nevertheless may reverse an IJ's decision if it was decided on the basis of an erroneous application of the law." *Id.* (quoting *Eduard v. Ashcroft*, 379 F.3d 182, 186 (5th Cir. 2004)).

## Discussion

On appeal, Granados argues that the BIA erred, as a matter of fact and law, when it rejected the three arguments that he brought concerning the IJ's denial of his motion to reopen.

### I.    Insufficient Notice

Granados re-urges his argument that the NTA, which contained a typographical error concerning his maternal surname, did not properly identify him and did not provide the required notice "to the alien," as contemplated by 8 U.S.C. § 1229(a)(1), federal regulations, and constitutional due process. The Immigration and Nationality Act ("INA") requires that written notice of removal proceedings "shall be given in person to the alien," although service by mail is permissible "if personal service is not practicable." 8 U.S.C. § 1229(a)(1). Moreover, in order for an alien to be ordered removed in absentia, the government must prove proper notice by "clear, unequivocal, and convincing evidence." 8 U.S.C. § 1229a(b)(5)(A). However, if an alien proves that he did not receive proper notice as contemplated by the INA, then the alien is entitled to rescind the in absentia ruling and reopen the proceedings. 8 U.S.C. § 1229a(b)(5)(C)(ii).

We review the IJ's and the BIA's conclusions of law regarding whether Granados received notice in compliance with 8 U.S.C. § 1229 and applicable

5

regulations de novo, but we give deference to their interpretation of immigration regulations, "unless that interpretation is plainly erroneous or inconsistent with the regulations." *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1022 (5th Cir. 2014). Granados argues that the NTA did not provide notice in compliance with 8 U.S.C. § 1229 because it was not addressed "to the alien," and it misidentified him. He further contends that the IJ and the BIA did not address this argument regarding compliance with the statute.

Granados also maintains that the NTA did not provide proper notice because it was not addressed to the appropriate party as provided by 8 C.F.R. § 1003.13. In pertinent part, 8 C.F.R. § 1003.13 provides that,

> Service means physically presenting or mailing a document to the appropriate party or parties; except that . . . a Notice to Appear or Notice of Removal Hearing shall be served to the alien in person, or if personal service is not practicable, shall be served by regular mail to the alien or the alien's attorney of record.

Thus, he contends that notice was neither proper nor effective.

Granados's arguments regarding compliance with the statute and regulations are unpersuasive. In support of his arguments, Granados cites our *Barrios-Cantarero* decision, which is distinguishable from the instant matter. 772 F.3d at 1022. In *Barrios-Cantarero*, the petitioner, Gustavo Barrios-Cantarero, was personally served with an NTA without a hearing date and later was mailed a notice of hearing that was addressed with an improper given name, Adrian Eliseo Barrios-Cantarero, the name of Gustavo's brother, who had been issued an NTA at the same time as Gustavo. *Id.* at 1020-21.  We concluded that the letter addressed to Gustavo's brother was improper notice to Gustavo under the statute and applicable regulations. *Id.* at 1021-22.

In contrast to the improper given name on the notice of hearing that was *mailed* in *Barrios-Cantarero*, the record in the instant case contains substantial evidence that indicates that Granados was personally served with

the NTA. Thus, Granados's insufficient notice argument based on the misspelling of his maternal surname is significantly weaker than that in *Barrios-Cantarero* because: (1) the misspelling, the addition of the letter "s" to the end of his maternal surname, is comparatively minor, and (2) there is substantial evidence that he received personal service of the document providing the time and place of the hearing. *See id.* at 1020-21 (concluding that the BIA failed to apply 8 C.F.R. § 103.8(a)(1)(i), the regulation requiring, in the context of service by mail, a notice addressed to the affected party). Given the minor misspelling and substantial evidence of personal service, Granados's argument that he did not receive proper notice of his removal hearing lacks merit. *See id.* at 1020-21; *cf. Hong Djie v. Holder*, 310 F. App'x 720, 721 (5th Cir. 2009) (concluding that substantial evidence supported sufficient notice despite the unsworn affidavits to the contrary of two married aliens who missed their hearing, where only one of them understood English, the aliens were personally served with NTAs and notice of their hearing, and their prior counsel asserted they had notice before he withdrew).

Additionally, with regard to Granados's contention that the IJ and the BIA failed to address his statutory compliance argument, we note that the IJ specifically found that the NTA provided proper written notice in compliance with § 1229(a)(1), even if his name was misspelled. In so reasoning, the IJ relied upon Granados's signature on the NTA's certificate of service as proof of personal service. We similarly conclude that Granados has shown no error of law as to his claim that the required notice "to the alien" was insufficient.[2]

---

[2] Granados further maintains that the IJ and the BIA did not address his argument regarding whether the NTA issued to him complied with constitutional due process. Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [removal] action and afford them an opportunity to present their objections" in order to comply with due process. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks omitted); *see also Barbosa v. Filip*, 308 F.

No. 17-60021

Therefore, the IJ and BIA did not abuse their discretion in denying reopening on the basis of insufficient notice, and we deny Granados's petition for review relative to his arguments concerning lack of proper notice.

## II.     Asylum Based on Changed Country Conditions

With regard to Granados's claim for asylum and related relief, he argues that the BIA and IJ erroneously concluded that the evidence he presented was indicative of a change in personal circumstances, not substantial evidence of a change in country conditions. Generally, an alien must file a motion to reopen within 90 days from the date of entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i). However, such time limitation is inapplicable if the motion "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(i).

In order to demonstrate changed country conditions, the petitioner must make "a meaningful comparison between the conditions at the time of the removal hearing and the conditions at the time the alien filed [his] motion to reopen." *Nunez v. Sessions*, 882 F.3d 499, 508 (5th Cir. 2018). In addition, evidence of a continuing trend is not sufficient to demonstrate changed country conditions. *Id*. The petitioner must demonstrate a material change rather than a mere incremental change, and "individual incidents, without evidence that

---

App'x 822, 824 (5th Cir. 2009). The record here, however, indicates that the NTA comported with statutory and constitutional requirements. In addition, the record contains evidence that Granados acknowledged that he understood everything that had been explained to him. Granados also concedes that he did not go to his hearing because the hearing was far away, and he had no means of transportation. Thus, Granados's argument that the misspelling of his maternal surname constituted a violation of his due process rights fails.

they are part of a larger material change, do not constitute changed country conditions." *Id*. at 508-09.

Granados contends that, when he did provide the court with evidence of changed country conditions, the IJ erroneously concluded that "the circumstances proffered by the respondent in his motion to reopen do not constitute changed country conditions, but rather a change in his personal circumstances." We note that this finding was only one portion of the IJ's conclusion. Granados's motion also included information regarding his personal circumstances and personal fear of the described gangs. Thus, while the IJ noted the information regarding personal circumstances and concluded that such information was insufficient to demonstrate changed country conditions, the IJ determined that although gang violence is a chronic problem in El Salvador, that condition existed in 2004 when Granados was ordered removed in absentia, and continues to affect the country. The IJ further explained that Granados conceded in his motion that gang violence has been a problem in El Salvador since 2004, but the violence was "qualitatively different in 2004." However, the IJ found that Granados failed to submit evidence that would allow the court to compare country conditions in 2004 to present country conditions in order to determine if a material change had occurred or if there was a "qualitative difference between the gang violence that occurred in 2004 and the violence that occurs today." Thus, the IJ concluded that "the continuation of such violence does not constitute a change in country conditions."

Similarly, Granados points to only one portion of the BIA's decision in arguing that the BIA misconstrued the record and his arguments. The BIA summarized the IJ's ruling, stating that "the Immigration Judge determined that the respondent has not established 'changed country conditions' arising in El Salvador since the expiration of the 90-day filing period in 2005, so as to

except the motion to reopen from the statutory and regulatory filing deadline." Thereafter, the BIA stated that it affirmed and declined to disturb the IJ's decision. However, since Granados's brief did include an argument that if his proceedings were reopened, he could make a prima facie showing that changed circumstances materially impacted his eligibility for asylum, the BIA wrote separately "to emphasize that the respondent's untimely motion to reopen must be based on changed country conditions arising in El Salvador, not 'changed circumstances,' which may be shown in order to except an untimely asylum application from the 1-year filing requirement under . . . 8 U.S.C. § 1158(a)(2)(D)."

Thus, based on the record, we cannot conclude that the BIA's and IJ's decisions with regard to changed country conditions were "capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that [they] [are] arbitrary rather than the result of any perceptible rational approach." *Singh*, 436 F.3d at 487 (internal quotation marks and citation omitted). The IJ's and BIA's decisions highlighted that some of Granados's arguments are inapplicable in demonstrating changed country conditions in El Salvador, but both the IJ and BIA also concluded that the submitted evidence of changed country conditions demonstrated continuing gang violence, rather than a material change in such violence. The IJ's and BIA's conclusions regarding changed country conditions are supported by substantial evidence in the record, and they did not abuse their discretion in denying reopening on this basis. *See Nunez*, 882 F.3d at 510 (holding that there was some evidentiary foundation for concluding that the increase in violence was not a material change, and the IJ and BIA did not abuse their discretion in denying

10

reopening).[3]  Thus, we deny the petition for review insofar as it relates to Granados's arguments concerning changed country conditions.

### III.    Sua Sponte Reopening of Removal Proceedings

We have made clear that we lack jurisdiction to review a BIA's discretionary refusal to reopen a case sua sponte. *Gonzalez-Cantu v. Sessions*, 866 F.3d 302, 306 & n.6 (5th Cir. 2017), *cert. denied,* 2018 WL 311388 (Jan. 8, 2018) (No. 17-653).  In so holding, we emphasized that the applicable regulation "gives an IJ or the BIA complete discretion to deny untimely motions to reopen," and thus "the reviewing court has no legal standard by which to judge the [ ] ruling." *Id.* at 306 (internal quotation marks and citation omitted).

Nonetheless, after acknowledging our lack of jurisdiction over a denial of a petitioner's request to reopen sua sponte, Granados argues that the BIA's failure to afford his request "full and fair review" constitutes a due process violation.   Specifically, he emphasizes that the BIA's review was inadequate in that it did not consider the significance of the government's failure to file a response to the motion to reopen. He also argues that the BIA engaged in impermissible fact-finding when it denied a sua sponte reopening on the basis that he was not reasonably diligent.

However, Granados's argument that the BIA's failure to give his request "full and fair review" amounts to a violation of due process is unavailing. We have previously rejected similar arguments because there is no due process

---

[3] Additionally, Granados's claim that the IJ and BIA erroneously required that the country conditions changed qualitatively to support a motion to reopen is unpersuasive. The IJ used the word "qualitative" after citing to Granados's own argument in his motion to reopen that gang violence was "qualitatively different in 2004." In finding that the continuation of violence in El Salvador did not constitute a change in country conditions, the IJ stated that Granados did not demonstrate that there was a "qualitative difference" between the gang violence in 2004 and at the time he filed his motion to reopen. However, the IJ did not err as a matter of law in using the word "qualitative" in conveying that the evidence submitted by Granados revealed a continuation of violence rather than a material change in country conditions.

right to discretionary relief from removal. *Ahmed v. Gonzales*, 447 F.3d 433, 440 (5th Cir. 2006); *see also Raymundo-Lima v. Lynch*, 661 F. App'x 272, 273-74 (5th Cir. 2016). That reasoning applies with equal force here. Thus, to the extent that Granados seeks review of the BIA's denial of a sua sponte reopening, this court lacks jurisdiction to consider this claim.

## Conclusion

For the aforementioned reasons, Granados's petition for review is DENIED in part and DISMISSED in part for lack of jurisdiction.